UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

THOMAS L. PANEK, as Administrator of the       03-CV-0644E(Sc)
  Buffalo Laborers Welfare Fund, Buffalo Laborers
  Pension Fund, Buffalo Laborers Education and
  Training Fund, Buffalo Laborers Supplemental
  Unemployment Benefit Fund and Buffalo Laborers
  Annuity Fund, and
LABORERS' LOCAL 210, LABORERS INTERNATIONAL
  UNION OF NORTH AMERICA,                 MEMORANDUM

            Plaintiffs,                     and

     -vs-                         ORDER[1]

DONALD J. BRAASCH CONSTRUCTION, INC.,

           Defendant.

---

## BACKGROUND

    In this action — commenced under the Employee Retirement Income Security Act, 29 U.S.C. §1101 *et seq.*, — the plaintiffs, which are several multi-employer benefit funds and one union (collectively "the Funds"), contend that Donald J. Braasch Construction, Inc. ("Braasch") improperly failed to make $8,793.93 in contributions to the Funds in violation of a collective bargaining agreement.  On April 14, 2004 Braasch paid $9,936.74 to the Funds, which sum represented the $8,793.93 in delinquent contributions and a partial interest payment of $1,142.81 on those delinquent contributions. Despite negotiations, the

---

[1]This decision may be cited in whole or in any part.

parties have been unable to reach an agreement as to the remaining amounts due to the Funds for interest, attorney's fees and costs.  Pending before the Court is the Funds' Motion for Summary Judgment in which they seek tolled interest of $1,369.22, interest in lieu of liquidated damages in the amount of $2,512.03, audit costs in the amount of $351.51, costs of the action in the amount of $190.00 and attorney's fees in the amount of $10,332.50, all pursuant to 29 U.S.C. §1132(g)(2).[2]

In opposition to the motion, Braasch argues that the Funds have incorrectly calculated the amount of interest owed on the delinquent contributions, that the Funds are not entitled to a second amount of interest of $2,512.03 and that the attorneys' fees sought are excessive and should not be allowed in light of the

---

[2] Section 1132(g)(2) of Title 29 of the United States Code states:

**(g) Attorney's fees and costs; awards in actions involving delinquent contributions**
    (2) In any*** action under this subchapter by a fiduciary or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan —
        (**A**) the unpaid contributions,
        (**B**) interest on the unpaid contributions,
        (**C**) an amount equal to the greater of —
            (**i**) interest on the unpaid contributions, or
            (**ii**) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (**A**),
        (**D**) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
        (**E**) such other legal or equitable relief as the court deems appropriate.
For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

parties' agreement to settle the case in October 2003.  Braasch does not contest the Funds' request for audit costs of $351.51 and agrees to pay the same.  Braasch makes no argument with respect to the Funds' request for an award of Court costs of $190.00.

## **DISCUSSION**

Summary judgment is appropriate if the moving party can demonstrate that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In other words, the moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party.  *See Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  In deciding a motion for summary judgment, the Court must resolve all ambiguities and draw all inferences in favor of the nonmoving party.  *See Savino* v. *City of New York,* 331 F.3d 63, 71 (2d Cir. 2003).  At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  *See Anderson* v. *Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).

In this case, there is no dispute that Braasch was required to make contributions, and that it failed to timely do so.  In April 2004 — recognizing that it was obligated to make the delinquent contributions —,  Braasch paid those

contributions as well as a portion of the accrued interest on those contributions.

Thus, the Funds have prevailed with respect to liability for the contributions.  The

only issue that remains is the Funds' entitlement to payment of the remainder of

the accrued interest, a second amount of interest as a penalty, costs of the audit,

costs of bringing this action and attorneys' fees.

A.  Interest on Unpaid Contributions and Double Interest

The Funds seek summary judgment awarding them $1,369.22 in remaining

accrued interest on the delinquent contributions pursuant to §1132(g)(2)(B) and

section 8(a) of the collective bargaining agreement.   The Funds also seek an

additional award of $2,512.03 in interest pursuant to §1132(g)(2)(C) and section

9(b) of the collective bargaining agreement.  The Funds are entitled as a matter

of law to both the payment of interest, or here the remainder of interest, pursuant

to subsection (g)(2)(B) and a second amount of interest pursuant to subsection

(g)(2)(C) and section 8(b) of the collective bargaining agreement. *See Iron Workers*

*Dist. Council of W. New York & Vicinity Welfare & Pension Funds* v. *Hudson Steel*

*Fabricators & Erectors, Inc.,* 68 F.3d 1502, 1506 (2d Cir. 1995).[3]

---

[3] Both in Vollbrecht's Affidavit in Support of the Motion and in the Memorandum of Law, the Funds refer several times to, and attach as an exhibit, an Order of this Court dated April 11, 2005 in which the Court opined that it might reach a different conclusion with respect to this issue.  Surprisingly, the Funds fail to note that the April 11, 2005 Order was vacated by this Court's Order dated May 10, 2005.

The Court cannot determine as a matter of law, however, that the Funds are entitled to the particular amounts they seek.  In support of the claimed amounts, the Funds have attached as an exhibit to their motion a letter dated April 14, 2004 which was sent to Braasch after the Funds had received Braasch's payment of the delinquent contributions.  *See* Exhibit G to the Vollbrecht Affidavit.  The letter purports to set forth the interest or "penalty" due for each month of delinquent contributions but fails to indicate the interest rate used to calculate such amounts and refers only to a "1% penalty" imposed in accordance with the collective bargaining agreement.  *See ibid.*  In contrast, in an October 1, 2004 letter to this Court, the Funds claim that the collective bargaining agreement provides for interest on delinquent contributions at a rate of 10%.  *See* Exhibit D to the Vollbrecht Affidavit.  It is unclear from the documentation provided whether the amounts of interest contained in the April 14, 2004 letter to Braasch, on which the Funds rely for purposes of this motion, are based on a 1%, 10% or 11% "penalty" as calculated by the Funds.[4]

Moreover, contrary to the Funds' representation in the October 1, 2004 letter, no portion of the collective bargaining agreement supplied to the Court provides for interest at a rate of 10%.  Section 8(a) of the collective bargaining

---

[4] There is also the possibility that the "1% penalty" referred to in the April 14, 2004 letter is merely a typographical error.  The Court finds no mention of a "1% penalty" in the portions of the collective bargaining agreement submitted in support of this motion.

agreement states that the interest rate to be applied to delinquent contributions is that found in 26 U.S.C. §6621.  Section 6621 provides only the mechanism or means of computing the applicable rate.  Unfortunately, the Funds have failed to provide their calculations demonstrating that the applicable rate determined in accordance with §6621 is 10%, as claimed.[5]  Because the Funds have failed to show (1) that 10% is the applicable rate under 26 U.S.C. §6621 and (2) that the application of the 10% interest rate results in the amounts claimed here, the Court cannot conclude as a matter of law that the Funds are entitled to the specific amounts claimed.  Therefore, at this time, the Funds' motion for summary judgment is denied without prejudice to the extent it seeks an award $1,369.22 pursuant to 29 U.S.C. §1132(g)(2)(B) and $2,512.03 pursuant to 29 U.S.C. §1132(g)(2)(C).

B.  Attorney's Fees

The Funds also request an award of $10,332.50 in attorney's fees.  Braasch objects to the amount of fees requested as excessive and argues that, as the matter was settled in principle on or about October 30, 2003, no attorney's fees should be awarded for work performed after that date.  Braasch's opposition cites no law in support of its position.

---

[5] The Court notes that Braasch's competing calculations are based on an interest rate of 9% but Braasch has provided no information detailing how it came to rely on that rate.

Subsection (g)(2)(D) of §1132 provides for an award of attorney's fees and the Funds are clearly entitled to an award of reasonable attorney's fees. *See* 29 U.S.C. §1132(g)(2)(D).  In this Circuit, the reasonableness of requested fees is ordinarily determined by first examining the lodestar amount — that is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *See Hensley* v. *Eckerhart,* 461 U.S. 424, 433 (1983); *Green* v. *Torres,* 361 F.3d 96, 98 (2d Cir. 2004).  The burden is on the party claiming fees to produce contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc.* v. *Casey,* 711 F.2d 1136, 1148 (2d Cir. 1983).  The purpose for requiring the records is to permit the Court to determine the reasonableness of the time expended for each particular task. *See id.* at 1147-48. The attorney submitting the fee application should exercise "billing judgment" because "hours not properly billed to one's client are also not properly billed to one's adversary pursuant to statutory authority." *Hensley,* at 434 (internal citation and quotation marks omitted).  With respect to the hourly rate requested, the applicant is generally required "to produce satisfactory evidence — in addition to the attorney's own affidavits — that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably

comparable skill, experience and reputation." *Blum* v. *Stenson,* 465 U.S. 886, 895-96 n.11 (1984).

1. Reasonable Hourly Rate

In this case, the Funds seek an hourly rate of $175 for the work performed by Andrew A. Gorlick ("Gorlick"), who is allegedly of counsel to Gorlick, Kravitz & Listhaus, P.C. and who allegedly has 20 years' experience in ERISA matters, and Michael Vollbrecht ("Vollbrecht"), who is allegedly a partner of Gorlick, Kravitz & Listhaus, P.C. and who allegedly has 15 years' such experience. The Funds also seek an hourly rate of $110 for the work performed by Karen Feger ("Feger"), who allegedly is an associate in the firm with approximately one year of experience.

At the outset, the Court must note the Funds' utter failure to provide evidence supporting the reasonableness of the claimed hourly rates. As noted above, a properly supported request includes "satisfactory evidence — in addition to the attorney's own affidavit ∗∗∗ . " *Ibid*. This Motion was accompanied solely by the affidavit of Michael Vollbrecht and a Memorandum of Law containing citations to other cases within this District awarding fees at similar rates. Although Vollbrecht's affidavit addresses the subject of attorney's fees generally, only the Memorandum of Law sets forth the requested hourly rates and the experience of each attorney justifying such rates. Thus, there is no competent

evidence before this Court that the attorneys in question are entitled to the hourly rates respectively sought by the Funds.  The attorneys requesting fees in this case have demonstrated in other cases within this District[6] their ability to properly support fee applications with their own affidavits averring their own levels of experience; therefore it is surprising that they have determined not to submit such documentation in this case.

Nevertheless, based on its own experience with cases of this nature within this District, the Court concludes that such proposed rates are reasonable for attorneys with similar experience.  *See Critchlow* v. *First Unum Life Ins. Co. of America,* 377 F. Supp.2d 337, 341-42 (W.D.N.Y. 2005) (awarding hourly rates of $250 and $200 in ERISA case); *Journeyman Plumbers & Apprentices UA Local Union No. 22* v. *Boyd Mech. Inc.,* 2003 WL 23350132, at *2 (W.D.N.Y 2003) (Elfvin, J.) (awarding an hourly rate of $150 for a senior partner, $140 for an associate attorney for ERISA default judgment).  The Court must also note, however, that by its calculation, multiplying the hourly rates sought by the number of hours claimed to have been expended by Gorlick, Vollbrecht and Feger yields a result of $10,369, not $10,332.50.[7]

---

[6] *See, e.g., Buffalo Laborers Welfare Fund* v. *Ascon Concrete Cutting, Inc.*, 03-CV-0079C (supplying affidavits from each attorney), *and Buffalo Laborers Welfare Fund* v. *Wilson Restoration & Waterproofing Corp.*, 03-CV-0668A(F) (same).

[7] Curiously, although time records were submitted for attorney Barbara Mehlsack and (continued...)

2. <u>Hours Reasonably Expended</u>

The Funds have submitted contemporaneous time records for attorneys Gorlick, Vollbrecht and Feger totaling 80.2 hours. The Court has closely examined each attorney's records and compared them with each other and with the Court's record of this litigation. Based on that examination, the Court concludes that some of the time expenditures were not reasonable and that the number of compensable hours must be reduced.

The Court notes several areas of concern, including internal inconsistencies among the time records of the three attorneys and inconsistencies between the attorneys' time records and the record of events in this case. For example, Gorlick billed .4 hours on September 8, 2003 for work described as "Document Prep/Revise/Proof – Complaint." The Complaint, however, had been filed in this Court on August 23, 2003. Certainly counsel could not have been preparing, revising or proofing a document which had already been filed. Similarly, on November 14, 2003 Gorlick billed 1 hour for the preparation of a settlement agreement. Braasch has asserted, and the Funds have not disputed, that no settlement agreement was ever transmitted in this case. In fact, Vollbrecht's

---

[7](...continued)
for legal assistant Michelle Stein for work they performed on this matter, this motion fails to seek compensation for their work. Because the Funds did not provide any information as to the extent of their legal experience, the Court will not award any hourly rate for their work.

affidavit in support of this motion asserts that "[s]ince April 1, 2004, the parties have been engaged in settlement negotiations."  Vollbrecht Affidavit ¶12.  Thus, counsel cannot reasonably expect to be compensated for this work.   Next, Gorlick's records indicate that on November 17 and December 5, 2003 and February 20, 2004 he engaged in the preparation, revision and/or proofing of "discovery" for a total of 2.8 hours.   A comparison of Gorlick's records with Feger's records, however, reveals that Feger also researched and drafted discovery requests — specifically interrogatories and a notice to produce documents — but the dates on which Feger engaged in such tasks do not correspond to the dates on which Gorlick engaged in his tasks.[8]  Thus, Gorlick's time entries are too vague to permit the Court to determine what work he actually performed and whether the time expended for such work was reasonable.

Another area of concern to the Court is the repeated billing by attorneys for seemingly administrative tasks.  For example, Feger's records contain entries for, *inter alia,* filing papers in the Clerk's office, preparing affidavits of service, proofing legal backs and calendaring.  Such are administrative tasks that do not require an attorney's expertise and should not be compensated at an attorney's

---

[8] For example, Feger's records indicate that she began researching and drafting interrogatories and a notice to produce documents on or about December 19, 2003 and that such were served on or about January 6, 2004.  Although it is possible that Gorlick actually instructed Feger as to the types of discovery to pursue, it would be mere speculation for the Court to conclude that such was the case and determine that such time was reasonably expended.

rate.  Most egregiously, there are two entries in Feger's records — one on March 17, 2004 and another on April 8, 2004 with corresponding time expenditures of 1.4 hours and 1.2 hours respectively —, for which the work performed is described as delivering papers to Magistrate Judge Scott's chambers.  Either the billing entries are vague and do not adequately describe the work actually performed or the time expended was clearly unreasonable.  Thus, counsel should not be compensated for the same.

Also included in Feger's time records are entries reflecting 3.5 hours of time spent researching and drafting a Motion for an Order Compelling Discovery. Although a discovery dispute arose during the time period in which that work was performed, such dispute was brought to the Court's attention by letter, the creation of which is noted in a separate time entry.  No Motion to Compel was ever filed in this case and counsel should not be reimbursed for its preparation. *See Gierlinger* v. *Gleason,* 160 F.3d 858, 880 (2d Cir. 1998).

Finally, Feger's records indicate that between May 18, 2004 and October 1, 2004 she spent over 10 hours researching and preparing a position statement for this Court.  These time expenditures do not correspond to any time frame in which a position statement was required by the Court. The parties were directed by Magistrate Judge Scott to submit a position statement for purposes of settlement negotiation prior to the April 15, 2004 settlement conference.  Feger's

records indicate that such was provided to the Court on April 8, 2004.  The next time the parties were required to submit a statement of that nature was in May 2005.  The Court cannot discern any purpose for counsel's expenditure of time for the preparation of such a statement between April and October 2004.[9]

For all of these reasons, the Court concludes that the requested hours must be reduced by 30%.  *See Kirsch* v. *Fleet Street, Ltd.,* 148 F.3d 149, 173 (2d Cir. 1998) ("[T]he court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming the fat from a fee application.") (internal citation and quotation marks omitted).  Thus the Funds will be compensated for 4.76 hours of Gorlick's time, 6.23 hours of Vollbrecht's time and 45 hours of Feger's time, for an award of $6,873.25.

C.  Costs

The Funds seek $351.51 in audit costs and $190 in Court costs.  As discussed earlier, Braasch does not object to the audit costs and has agreed to pay them.  Therefore, the Funds are awarded audit costs of $351.51.  Braasch has not objected to the requested Court costs of $190.  Normally such costs are awarded at the conclusion of the case, once a judgment has been entered.

---

[9] Counsel may recall a 7-page, single-spaced letter addressed to this Court and dated October 1, 2004 outlining the Funds' position with respect to settlement and explaining why the Funds' prior settlement demand was no longer viable.  The letter asks for no relief or court intervention but contains many legal arguments and citations to law.  Neither the docket sheet nor this Court's records indicate any purpose served by the letter.  It appears to have been a wholly unnecessary expenditure of time.

Because the issue concerning the amount of interest to be awarded remains outstanding, the motion for an award of Court costs is similarly denied without prejudice to its renewal at an appropriate time.

Accordingly, it is **ORDERED** that the Funds' Motion for Summary Judgment is denied without prejudice with respect to the requests for $1,369.22 in interest pursuant to 29 U.S.C. §1132(g)(2)(B) and for a second award of interest of $2,512.03 pursuant to §1132(g)(2)(C) and with respect to the request for an award of $190 in Court costs and is granted with respect to the Funds' request for audit costs of $351.51 and for attorney's fees in the amount of $6,873.25.

The Funds may renew their Motion for Summary Judgment with respect to awards of interest pursuant to §1132(g)(2)(B) and (C) no later than December 30, 2005, and Braasch may submit any response no later than January 17, 2006.  In the event no such motion is made, the parties shall appear before Part III of this Court on January 6, 2006 at 3:00 p.m. to set a trial date.

DATED:     Buffalo, N.Y.

            November 25, 2005


                            _____
                                 /s/ John T. Elfvin
                            JOHN T. ELFVIN
                            S.U.S.D.J.